<u>NOT FOR PUBLICATION</u>                    [Docket Nos. 28, 35, 36 & 37]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| SHEET METAL WORKERS INTERNATIONAL ASSOCIATION LOCAL UNION 27, AFL-CIO, <br><br> Plaintiff, <br><br> v. <br><br> E.P. DONNELLY, INC., et al., <br><br> Defendants. | Civil No. 07-3023(RMB) <br><br><br> **OPINION** |

APPEARANCES:

Steven Bushinsky, Esq.
Brett Last, Esq.
O'Brien, Belland & Bushinsky, LLC
2111 New Road, Suite 101
Northfield, NJ 08225
     Attorneys for Plaintiff

Louis Rosner, Esq.
1100 North American Building
121 South Broad Street
Philadelphia, PA 19107
     Attorneys for Defendant, E.P. Donnelly, Inc.

Raymond Heineman, Jr., Esq.
Kroll, Heineman & Giblin, LLC
99 Wood Avenue South, Suite 307
Islin, NJ 08830
     Attorneys for Defendant New Jersey Regional Council of
     Carpenters

Thomas Zipfel, Esq.
Cohen Seglias Pallas Greenhall & Furman PC
1515 Market Street, 11th Floor
Philadelphia, PA 19102

**BUMB**, United States District Judge:

1

**Introduction:**

This matter comes before the Court upon several motions: 1) a motion for summary judgment filed by the Plaintiff, Sheet Metal Workers International Association Local Union 27, AFL-CIO, ("Local 27") [Docket No. 28]; 2) The Defendants', E.P. Donnelly, Inc., ("Donnelly") and Sambe Construction Co., Inc., ("Sambe"), cross-motions to vacate the arbitration awards, [Docket Nos. 35 & 37], and; 3) and a motion to stay the proceedings [Docket No. 36].  Also pending is Defendant Sambe's 56(f) motion requesting that this Court deny Plaintiff's motion for summary judgment as premature.


**Procedural and Factual Background:**

The following facts are derived from the parties' submissions.  This matter involves a dispute relating to the assignment of standing seam metal roofing work at the Egg Harbor Township Community Center (hereinafter the "Project").  The Project is the subject of a Project Labor Agreement ("PLA") established pursuant to N.J. Stat. Ann. § 52:38-1 et seq.  Egg Harbor Township ("Egg Harbor") required that any party who desired to work on the community center had to execute the PLA. As the township administrator for Egg Harbor has explained, the purpose of entering into the PLA was "to insure the project was union built and to provide for efficiency, safety, quality

2

construction, and the timely completion of our building."

Pursuant to Article 2 Section 4, the PLA,

together with the local Collective Bargaining Agreements
appended hereto as Schedule A represents the complete
understanding of all signatories and supersedes any
national agreement, local agreement or other collective
bargaining agreement of any type which would otherwise
apply to this Project(s) in whole or in part.

Bushinsky Ex. D, Article 2, Section 4.  The Defendants deny that

Local 27's Collective Bargaining Agreement ("CBA") was appended

to Schedule A and also deny that they assented to that CBA.

Defendant Sambe, a signatory to the PLA, is the general

contractor on the Project.  <u>See</u> Bushinsky Decl. at Ex. D.

Defendant Sambe hired Donnelly as a subcontractor to perform the

standing seam metal roofing work.  Donnelly executed a "Letter of

Assent" on March 30, 2007, wherein it agreed to be bound by the

terms and conditions of the PLA.  Bushinsky Decl. at Ex. E.

Specifically, in signing the Letter of Assent, Donnelly agreed

that any party it selected to perform the standing seam metal

roofing work was required to be a signatory to the PLA.  The

Letter of Assent provided, in relevant part, that,

[Donnelly], for and in consideration of the award of a
Contract to perform work on [the] Project, and in
further consideration of the mutual promises made in
the Project Labor Agreement, a copy of which was
received and is acknowledged, hereby:

* * *

Agrees to secure from any Contractor(s) (as defined in
said Project Labor Agreement) which is or becomes a

3

> Subcontractor(s) (of any tier), a duly executed Letter
> of Assent in form identical to this document prior to
> commencement of any work.

Bushinsky Decl. at Ex. E.

The New Jersey Regional Council of Carpenters and the United Brotherhood of Carpenters and Joinders of America, Local 623, (the "Carpenters"), did not execute the PLA.  Both Defendants Sambe and Donnelly are signatories to CBAs with the Carpenters. A dispute arose when Donnelly did not select Local 27 to perform the roofing work at the community center, but rather, selected the Carpenters.  Local 27 informed Donnelly that the Carpenters could not work on the Project because it was not a signatory to the PLA.  The Carpenters responded by threatening to picket the Project if the work was reassigned by Donnelly to Local 27.

Local 27, believing that it was following the express terms of the PLA regarding jurisdictional disputes, (set forth in Article 10), scheduled an arbitration hearing before arbitrator Stanley Aiges to be held on June 5, 2007, in order to resolve the dispute over the work assignment.  On June 1, 2007, counsel for the Carpenters sent Aiges a letter informing him of its position that the PLA does not conform with federal or New Jersey law and, therefore, "does not bind current employer or union signatories or control currently assigned work."  Zipfel Decl. Ex. E.

Following the hearing, at which both Defendants were present, Arbitrator Aiges awarded the disputed work to Local 27

citing "area practice."  More specifically, Aiges found that the
"prevailing area practice for the installation of the disputed
work at the Egg Harbor Township Community Center favors the
assignment of that work to . . . Local 27."  Bushinsky Decl. at
Ex. I.

On May 2, 2007, Donnelly filed an Unfair Labor Practice
("ULP") charge with the National Labor Relations Board ("NLRB" or
the "Board") alleging that the Carpenters violated Section
8(b)(4)(D) of the National Labor Relations Act ("NLRA").  Docket
No. 52 Ex. A.  This ULP charge gave rise to a jurisdictional
dispute proceeding under Section 10(k) of the NLRA.  Id.

In the interim, because the work was not assigned pursuant
to Aiges' award, Local 27 filed a grievance pursuant to Article
10 of its CBA seeking confirmation of the Aiges' award.  Pursuant
to Local 27's CBA, the Local Joint Adjustment Board ("JAB") held
a hearing on July 16, 2007.  Although both Defendants Sambe and
Donnelly were invited to attend, they did not.  Prior to the JAB
hearing, both Sambe and Donnelly informed the JAB that they would
not participate in the proceeding and that they believed the JAB
lacked jurisdiction over the matter.  See Zipfel Exs. I & J.  In
its decision, the JAB determined that Donnelly and Sambe, by
assigning the metal roofing and siding work to the Carpenters,
violated the PLA and Local 27's CBA.  The JAB further found that
if the work was not reassigned to Local 27, then Defendants were

responsible for wages and benefits in the amount of $428,319.26.

On August 20, 2007, the Plaintiff filed a petition with this Court for an Order to Show Cause why a Preliminary Injunction should not issue for Defendants' failure to comply with the arbitration awards.  This Court heard oral argument from the parties on August 24, 2007.  While this Court denied Plaintiff's petition, it stated that Plaintiff was likely to succeed on the merits of the matter.

On December 31, 2007, while the within motions were pending, the NLRB issued its ruling in the 10(k) proceeding.  The NLRB concluded that the Carpenters were entitled to continue performing the work in dispute.  The NLRB, however, did not address the validity or enforceability of the PLA, but stated that the award of the disputed work to the Carpenters,

> would not prevent Egg Harbor Township from exercising its authority under state law to negotiate and execute project labor agreements, nor would it invalidate the PLA. [Donnelly] would continue to be bound under the terms of the PLA, and the parties to the PLA would retain any rights they may have under state law to bring a suit for damages against the employer for any breach of the PLA.

United Brotherhood of Carpenters and Joiners of America, Local Union No. 623 and E.P. Donnelly, Inc., and Sheet Metal Workers' International Assoc., Local 27, AFL-CIO, 351 N.L.R.B. No. 97 at * 4 (Dec. 31, 2007).  Additionally, the Board wrote that: "[b]oth [the Carpenters Union] and (arguably) Local 27 have separate binding contracts with [Donnelly] and [Donnelly's] obligations

6

under one contract cannot be used to void its obligations under the other."  Id.

Local 27 has moved for summary judgment seeking to enforce the PLA and the awards of Arbitrator Aiges and the JAB. Defendants have cross-moved to vacate the arbitration awards and Donnelly has moved to stay this matter pending resolution of the 10(k) issue by the NLRB.

**Legal Standard:**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The threshold inquiry is

---

[1] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.

7

whether there are "any genuine factual issues that properly can
be resolved only by a finder of fact because they may reasonably
be resolved in favor of either party."[2] Liberty Lobby, 477 U.S.
at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-
30 (3d Cir. 1995) (citation omitted).


**Legal Analysis:**

Plaintiff Local 27 and the Defendants agree that the Project
was to be governed by a PLA.  Defendants Donnelly and Sambe
disagree, however, that they are bound to the PLA, and aver that
the PLA is invalid under both state and federal law.  Moreover,
Defendants point to the fact that the PLA required the CBAs be
appended to the PLA in order to be considered part of the
governing agreement, and, because the Local 27 CBA was allegedly
never appended to the PLA, Defendants cannot be bound to the CBA
nor the award that was rendered based on that agreement.[3]

With this background, the Court turns to the specific issues
currently pending.

---

[2] The moving party always bears the initial burden of
showing that no genuine issue of material fact exists, regardless
of which party ultimately would have the burden of persuasion at
trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);
Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir.
2005).

[3] Notably, Plaintiff has not presented any evidence that
the CBA was appended.

8

*a) Motions to Stay*

On October 22, 2007, Donnelly cross-moved to stay these proceedings pending issuance of the Board's decision in the 10(k) proceeding in Case No. 4-CD-1178.  Because the Board issued its ruling on December 31, 2007, the request for a stay will be denied as moot.  United Brotherhood of Carpenters, 351 N.L.R.B. No. 97 (Dec. 31, 2007).

*b) Pending ULP*

On January 22, 2008, Donnelly wrote this Court to "update" it as to ancillary proceedings, including a new ULP filed by Donnelly with the Board (Charge No. 4-CD-1188) charging Local 27 with a violation of Section 8(b)(4)(D) based on "its refusal to comply with the Board's 10(k) award by continued maintenance of its district court action to enforce the arbitration awards." [Docket No. 53].  Plaintiff construed this letter as a request to delay the proceedings.  See Docket No. 57.  While Donnelly requested a status conference as a result of the pending ULP, there was no explicit request for a delay of these proceedings. As there is no request pending, this Court will not refrain from acting on the pending motions pending the resolution of the ULP.

*c) Rule 56(f)*

Ever mindful that "it is 'improper' for a district court to

9

rule on summary judgment without first ruling on a pending Rule 56(f) motion" – this Court will first address Defendant Sambe's request that Plaintiff's motion for summary judgment be denied as premature.  <u>Doe v. Abington Friends Sch.</u>, 480 F.3d 252, 257 (3d Cir. 2007) (citing <u>St. Surin v. V.I. Daily News, Inc.</u>, 21 F.3d 1309, 1315 (3d Cir. 1994)).

Rule 56(f) states:

If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) deny the motion;
(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
(3) issue any other just order.

The Third Circuit has interpreted Rule 56(f) "as requiring a party seeking further discovery in opposition to a summary judgment motion to file an affidavit specifying what information is sought, how it would preclude summary judgment if uncovered, and why it had not been previously obtained." <u>Zheng v. Quest Diagnostics, Inc.</u>, 2007 U.S. App. LEXIS 22575 at *14 (3d Cir. 2007).  Where a 56(f) motion is properly filed and supported, it is generally granted "as a matter of course" because "a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery," <u>Doe</u>, 480 F.3d at 257 (internal quotations omitted).

In its 56(f) declaration, Sambe, via Thomas Zipfel, Esq., states that Plaintiff's motion for summary judgment, filed just

eleven days after the pleadings closed, is premature in light of the fact that there has been no meaningful opportunity to conduct discovery.  Zipfel Decl. Ex. X.  More specifically, Sambe states that discovery is required as to the validity of the PLA and that the evidence sought in discovery will demonstrate, inter alia, that the Egg Harbor PLA fails to comply with New Jersey's statute concerning PLAs and that the PLA was presented to Sambe without the required attachments and, thus, is invalid under New Jersey law.

Whether or not the PLA is, in fact, valid forms the entire basis of this lawsuit.  If, as Sambe says, discovery will show that the PLA is invalid under the law, than this matter is easily resolved.  At this juncture, however, there has been little evidence presented to the Court on this issue by any party.  Obviously, Sambe requires discovery for the reasons stated in its 56(f) affidavit and both Sambe and Donnelly argue at length that the PLA is invalid under both state and federal law.[4]  Plaintiff responds somewhat summarily on the issue of validity by citing this Court's statements at the preliminary injunction hearing held in this matter.  See Docket No. 43 at 9; Pl.'s Opp. to Sambe Br. at 17.

---

[4] The Court finds it interesting that both Defendants would either sign or assent to an agreement they seem so confident violated both state and federal law.  Perhaps discovery will demonstrate the reasons behind the Defendants' thinking and why they are not prevented from making this argument.

11

In addition to allowing the Defendants to properly oppose Plaintiff's motion, discovery on the validity of the PLA would also behoove the Plaintiff by allowing it to present more evidence in support of its argument that the PLA is valid, as this issue is the touchstone of this entire matter.  While Plaintiff attempts to paint this as an issue regarding the arbitration awards, the Court would not need to reach the validity of the awards, or any other issues in this case for that matter, if the PLA is invalid.  As the matter currently stands, Plaintiff seeks to rely on this Court's comments during the preliminary injunction hearing with regard to success on the merits as definitive of the issue.  While indicative of this Court's thinking at that time, such statements do not constitute a final and binding decision as to the validity of the PLA.  See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)(stating that a party "is not required to prove his case in full at a preliminary-injunction hearing," and, therefore, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."); Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc., 376 F.2d 543, 548 (3d Cir. 1967); Vazquez v. Carver, 1987 U.S. Dist. LEXIS 6828 at * 43 (E.D. Pa. 1987)("The court's decision to grant or deny a preliminary injunction, based as it is on a limited hearing, does not constitute an adjudication of the ultimate rights of the

parties and does not foreclose further consideration at the trial on the merits of any question presented.")[5]

Thus, in light of the fact that the validity of the PLA impacts many sub-issues presented in this case, this Court finds that it cannot rule on Plaintiff's motion for summary judgment without adequate discovery as to whether the PLA is valid under state and federal law.  As such, Plaintiff's motion for summary judgment is denied without prejudice as premature.

   *d) Cross-Motions to Vacate*

Also pending are the Defendants, Donnelly's and Sambe's cross-motions to vacate the two arbitration awards issued in this case.  Both Defendants argue that, even assuming the PLA is valid (which both vigorously contest), that the awards of both Arbitrator Aiges and the Local Joint Adjustment Board are invalid and must be vacated.

The first step in a review of an arbitration award "involves an examination of the sources of the arbitrator's authority." Major League Umpires Ass'n v. American League of Professional Baseball Clubs, 357 F.3d 272 (3d Cir. 2004).  "'[A]n arbitrator may not venture beyond the bounds of his or her authority,' which

---

[5] Moreover, the Court's comments during the preliminary injunction hearing indicated that the hearing was not a definitive determination on the merits of the PLA validity issue. See August 24, 2007 Hearing Tr. at 126:1-25.

13

is defined by the terms of the CBA, but also by the scope of the issues submitted by the parties." Id. (quoting Matteson v. Ryder System, Inc., 99 F.3d 108, 112 (3d Cir. 1996)).  An arbitration award that draws its essence from the collective bargaining agreement should be upheld.  Id. at 280.

It is the province of the court to "determine in the first instance whether the parties had in fact agreed to arbitrate the subject matter." Troy Chemical Corp., v. Teamsters Union Local No. 408, 37 F.3d 123, 126 (3d Cir. 1994).  This occurs by first examining the collective bargaining agreement.  "[A]rbitration awards are entitled to a strong presumption of correctness which can only be overcome in limited circumstances, as outlined in Section 10 of the [Federal Arbitration Act] and in common law principles adopted by the Third Circuit." Jones v. Intarome Fragrance Corp., 2007 U.S. Dist. LEXIS 31575 at * (D.N.J. Apr. 27, 2007).  These circumstances include:

    (1) where the award was procured by corruption, fraud, or undue means;

    (2) where there was evident partiality or corruption in the arbitrators, or either of them;

    (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

    (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was

14

not made.

9 U.S.C. § 10.  In addition to the above-referenced statutory
bases for vacating an arbitration award, the Third Circuit has
created two common law grounds for vacating an arbitration award
1) an arbitrator's manifest disregard for the law, as opposed to
a legal error, and 2)if the award is completely irrational.
Jones, 2007 U.S. Dist. LEXIS 31575 at * 11-12.

    *i) JAB Award*

    In its decision, the JAB stated that it sat, "pursuant to
the SMW Local Union #27 Collective Bargaining Agreement, Article
X, Section 2," and that the grievance "was properly before the
Board for consideration."  Zipfel Decl. Ex. L.  The JAB found
that the Defendants were in violation of Local 27's CBA "Article
I, Section 2, Article, II, Section 1 and Article XL, as well as
being in violation of the PLA, which includes the attachments
referred to in the PLA as Schedule A."  Id.  This Court finds
that because the validity of the PLA does not impact the
enforceability of the JAB's award, it may properly rule on it at
this time.  The parties expend large portions of their briefs
discussing the issue of whether or not Local 27's CBA was, in
fact, appended to the PLA that was signed by Sambe and assented
to by Donnelly.  See e.g., Docket No. 36 at 7.  While this may
remain an issue of fact at this juncture, it does not preclude

15

this Court's decision to vacate the JAB's award because, even
assuming Local 27's CBA was appended to Schedule A, the PLA (also
assuming its validity for purposes of this discussion) contains a
clear and unambiguous "supremacy clause."  This clause indicates
that where provisions in the PLA and an appended CBA cover the
same subject, the PLA provisions apply:

> This Agreement, together with the local Collective
> Bargaining Agreements appended hereto as Schedule A
> represents the complete understanding of all signatories
> and supersedes any national agreement, local agreement or
> other collective bargaining agreement of any type which
> would otherwise apply to this Project(s), in whole or in
> part.  **Where a subject covered by the provisions,
> explicit or implicit, of this Agreement is also covered
> by a Schedule A, the provisions of this Agreement shall
> prevail.**  It is further understood that neither the CM
> nor any Contractor shall be required to sign any other
> agreement as a condition of performing work on this
> Project.  No practice, understanding or agreement between
> a Contractor and Local Union, which is not explicitly set
> forth in this Agreement, shall be binding on this
> Project.

Bushinsky Decl. Ex. D, Article 2, Section 4 (emphasis added).

Article 10 Section 3 contains the PLA's provisions for
resolving jurisdictional disputes for work assigned to another
Union.  As part of this process, the PLA provides that "[a]ny
jurisdictional award pursuant to Section 3 shall be final and
binding on the disputing Local Union and the involved Contractor
on this Project only, and may be enforced in any court of
competent jurisdiction."  PLA, Article 10 Section 4.  Thus, Sambe
argues, the sole method for enforcing the Aiges award was to seek

16

court enforcement and Plaintiff's choice to attempt to enforce the award through the process set forth in its own CBA is unenforcable.

Sambe contends that Plaintiff "bypassed the only permissible enforcement mechanism set forth in the PLA, i.e., confirming the award in court (Exh. P), and instead filed a grievance with the Local Joint Adjustment Board pursuant to Article X of its CBA." Docket No. 35 at 5.  Because the JAB convened pursuant to Article X of Local 27's CBA, which provides that grievances covered by the CBA are defined as those "arising out of interpretation or enforcement of this Agreement," the JAB was without jurisdiction to enforce the award rendered pursuant to the PLA.  Zipfel Decl. Exc. Q. Art. 1 Section 1.

The arguments set forth by Donnelly are similar: jurisdictional disputes must be addressed through the procedure set forth in the PLA.  Moreover, Local 27 charged Defendants with violations of various provisions of the PLA and the PLA contains an exclusive grievance procedure in Article 9, which states that it is the "exclusive procedure" for resolution of "[a]ny question, dispute or claim arising out of or involving the interpretation or application of the Agreement."  PLA Article 9 Section 1.  Thus, Donnelly argues, any claim Local 27 might have with respect to its obligations under the PLA constitute an Article 9 grievance.

17

Plaintiff begins its rejoinder with a reassertion of the PLA's validity, an issue reserved for later resolution, as discussed above, and asserts that by virtue of the PLA, the Defendants are "bound by the PLA's dispute resolution mechanism, including the Local 27 CBA's provisions. . . ." Docket No. 42 at 20. In attempting to reconcile the PLA's dispute resolution provision and the CBA provisions, Plaintiff argues that "Article 10 clearly states that a jurisdictional award <u>may</u> be enforced in any court of competent jurisdiction, not that Arbitrator Aiges' decision must be enforced in a court of competent jurisdiction." Docket No. 43 at 6. Thus, Plaintiff believes that the PLA does not prevent it from seeking enforcement of its award through the provisions of its CBA.

The Court finds this semantic argument unconvincing; the PLA clearly states that where its provisions and those of an appended CBA overlap, the PLA prevails. In this case, the PLA provides clear methods for both jurisdictional disputes and grievances and the intent that the PLA provisions preempt those in appended CBAs are made clear by the supremacy clause. To read the section of the PLA stating that a party may seek to enforce a jurisdictional award in a court of competent jurisdiction as "optional" renders those portions of the dispute resolution provisions a nullity - an outcome clearly undermined by the explicit supremacy clause. As such, the proper method of enforcement was via the PLA

18

provisions.  Therefore, the JAB, who sat pursuant to Plaintiff's CBA, was without jurisdiction to render the award.  See Major League Umpires Assoc., 357 F.3d at 280 (stating that first step regarding arbitrability is whether a particular dispute is the subject to the parties' contractual arbitration provision).

As clearly stated by the JAB, the JAB convened pursuant to the LOCAL 27 CBA, and for the reasons discussed above, the CBA dispute resolution provisions are inapplicable in light of the clear supremacy clause of the PLA.  Therefore, the arbitrator was without authority to issue the award and it must be vacated.  See Major League Umpires Assoc., 357 F.3d 272, 279 (stating that an arbitrator may not venture beyond the bounds of his or her authority).

### ii) Arbitrator Aiges' Award

The nexus of the Defendants' arguments regarding their request that Arbitrator Aiges' award be vacated is that Aiges lacked authority to issue the arbitration award or even conduct the arbitration because his sole authority to do so would have arisen under the PLA and the PLA is invalid.  Because this Court has already ruled that a decision on the validity of the PLA is premature at this time, it finds that it cannot properly evaluate the Defendants' motions to vacate the award at this time.  Whether the PLA is valid or invalid will directly impact whether

Arbitrator Aiges' award should be vacated.

Although the Court will not vacate Aiges' award at this juncture, it will touch upon the most recent dispute regarding the preclusive effect of the 10(k) decision rendered by the NLRB on December 31, 2007.  In its supplemental papers, Donnelly argues that even if the PLA is valid, there can be no remedy for Plaintiff because Aiges' award resolved the jurisdictional dispute in favor of Local 27 based on area practice.  Because the NLRB explicitly found that the Carpenters were entitled to the work, Donnelly argues, the 10(k) determination leaves the Plaintiff with no remedy.  Moreover, Donnelly argues that a "pay in lieu of work" solution is similarly unenforcable.

Because the issue of the validity of the PLA is still unresolved, this Court will not discuss this issue at length but will make clear that it disagrees with the implied end of Donnelly's position - that there is no monetary remedy for Plaintiff even if the PLA is valid and Defendants breached that contract.  Indeed, even the NLRB opined that a monetary award was a possibility: "[b]oth Local 623 and (arguably) Local 27 have separate binding contracts with [Donnelly] and [Donnelly's] obligations under one contract cannot be used to void its obligations under the other."  United Brotherhood of Carpenters, 351 N.L.R.B. No. 97 at * 4 (Dec. 31, 2007).

**Conclusion:**

In light of the foregoing, this Court will deny Plaintiff's motion for summary judgment is denied without prejudice and Sambe's Rule 56(f) request is granted.  Donnelly's motion to stay is denied as moot and the Defendants' motions to vacate the arbitration awards are granted in part and denied in part.  The motion to vacate is granted only to the extent that it impacts the decision of the Local Joint Adjustment Board.  An appropriate Order will follow.


Dated: March 27, 2008                    s/Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         UNITED STATES DISTRICT JUDGE