NOT FOR PUBLICATION                                    [Dkt. Ent. 135]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| SHEET METAL WORKERS INTERNATIONAL ASSOCIATION LOCAL UNION NO. 27, AFL-CIO,<br><br>         Plaintiff,<br><br>    v.<br><br>E.P. DONNELLY, INC., and SAMBE CONSTRUCTION CO. INC.,<br><br>         Defendants. | Civil No. 07-3023 (RMB/JS)<br><br><br>**OPINION** |

Appearances:

Steven J. Bushinsky, Esq.
Mark E. Belland, Esq.
O'Brien, Belland & Bushinsky, LLC
1526 Haddonfield-Berlin Road
Cherry Hill, NJ 08003

    Attorneys for Plaintiff Sheet Metal Workers International
    Association Local Union No. 27, AFL-CIO

Louis Rosner, Esq.
1100 North American Building
121 South Broad Street
Philadelphia, Pa 19107

    Attorney for Defendant E.P. Donnelly, Inc.

Lawren H. Briscoe, Esq.
Melissa C. Angeline, Esq.
Jonathan Landesman, Esq.
Cohen, Seglias, Pallas, Greenhall & Furman, P.C.
30 South 17th Street, 19th Floor
Philadelphia, PA 19103

    Attorneys for Defendant Sambe Construction Co. Inc.

1

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon a motion for damages by plaintiff Sheet Metal Workers International Association Local Union No. 27, AFL-CIO ("Local 27"). For the following reasons, the Court finds that defendant Sambe Construction Co. Inc. ("Sambe"), while liable for a breach of contract, must pay only nominal damages to Local 27. Accordingly, only Sambe's co-defendant, E.P. Donnelly, Inc. ("Donnelly"), will be responsible for compensating Local 27 for its injury arising from the events underlying this case.

## BACKGROUND

This case has a complex factual and procedural history, which is detailed in the Court's Opinion of December 3, 2010 (the "Summary Judgment Opinion"). See Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc., __ F. Supp. 2d __, 2009 WL 4667101, *1-3 (D.N.J. 2009) (slip op. 3-9). In short, this case is about a construction subcontractor, Donnelly, which, by contract, effectively promised the same roofing work to two competing labor unions. The National Labor Relations Board ultimately determined that one of the unions, Local 623, had a stronger claim to the disputed work. The other union, Local 27, which was promised but not ultimately awarded the work, brought this breach of contract action against Donnelly and the general contractor, Sambe, for damages flowing from its

lost work opportunity.  In the Summary Judgment Opinion, the Court partially granted and partially denied motions for summary judgment by all parties.  Of particular importance, the Court found that Sambe and Donnelly were liable for committing common-law breach of contract.

After granting summary judgment to Local 27 on the breach of contract claim, the Court scheduled a trial to determine damages, which was to begin on January 5, 2010.  However, based upon the assurances of all counsel that no issues of fact would be dispositive of a damages calculation, (Jt. Fnl. Ptl. Ord., pts. III-IV [Dkt. Ent. 131]), the Court canceled the trial and allowed the parties to brief the contested legal issues, (Ord., Dec. 31, 2009 [Dkt. Ent. 132]).  After having reviewed the completed briefing, however, the Court issued an Order noting that two issues necessary to a determination of damages remained unresolved.  (Ord., Feb. 9, 2010 [Dkt. Ent. 141].)  First, it became clear that a calculation of damages was not possible without a determination of whether Donnelly was bound by Local 27's collective bargaining agreement (the "CBA"), which would require a finding of fact.  Second, the parties had not adequately briefed what damages arose as a consequence of Sambe's contractual breach (as distinguished from Donnelly's breach).  The Court ordered a trial to resolve the first matter and supplemental briefing to resolve the second.  (Id.)  Having

received the parties' supplemental briefs, the Court now decides the second issue.

## LEGAL STANDARD

New Jersey law controls the determination of damages for this breach of contract action.  See Sheet Metal, 2009 WL 4667101, *3 (slip op. 9) (applying New Jersey law).  Under New Jersey contract law, a non-breaching party is entitled to compensatory damages for the losses that arose from the breach.  525 Main St. Corp. v. Eagle Roofing Co., 34 N.J. 251, 254, 168 A.2d 33 (1961).  Compensatory damages are calculated to place the injured party in as good a monetary position as it would have enjoyed if the contract had been performed as promised.  Id.  Here, as a general matter, Plaintiff is entitled to the monetary value of whatever benefit it would have received but for the breach of contract.

## DISCUSSION

### 1. Sambe's Breach

The Court's analysis begins from the undisputed proposition that Sambe is responsible only for the damages that arose as a consequence of Sambe's breach.  According to the contract governing the parties' relationship -- the Project Labor Agreement ("PLA") -- Sambe bears no liability for Donnelly's breach.  (See PLA, art. 2, § 5 (disclaiming joint liability).)

To determine what damages arose as a consequence of Sambe's

4

breach, the Court must first identify what precisely Sambe did, or failed to do, to breach the PLA.  The Summary Judgment Opinion set forth two bases for the Court's finding that Sambe had breached the PLA.  First, the Court accorded preclusive effect to the finding of Arbitrator Stanley Aiges that Sambe had breached the PLA.[1]  Sheet Metal, 2009 WL 4667101, at *3-5 (slip op. 10-16).  Second, the Court found that:

> Even were Arbitrator Aiges's ruling not entitled to preclusive effect, the Court rules in the alternative that the undisputed evidence demonstrates that Sambe . . . breached [its] PLA obligations. . . . The PLA provides that "the General Contractor shall require all Contractors of whatever tier who have been awarded contracts for work covered by this Agreement, to accept and be bound by the terms and conditions of the Project Agreement by executing the Letter of Assent prior to commencing work.  <u>The General Contractor shall assure compliance with this Agreement by the Contractors</u>."  (PLA, art. 3, § 1 (emphasis added).)  Although Sambe argues that it discharged its contractual duty by requiring Donnelly to execute the Letter of Assent, the PLA clearly required Sambe to "assure [Donnelly's] compliance," which, it is undisputed, it did not do.

Sheet Metal, 2009 WL 4667101, at *5 n.16 (slip op. 16 n.16).  Because Arbitrator Aiges did not specify what conduct established Sambe's breach, the Court must assume that Arbitrator Aiges, like the Court, viewed Sambe's failure to assure Donnelly's compliance

---

[1] Sambe has not argued that Arbitrator Aiges's finding improperly held Sambe jointly liable for Donnelly's breach.  However, if Sambe had raised that argument in its damages briefing, it would be long overdue as Sambe failed to raise this point in its summary judgment briefs.  In any event, the Court is not empowered to review the correctness of an arbitrator's decision when that decision is accorded preclusive effect.  Thus, the Court must take as true that Sambe breached the PLA.

with the PLA as Sambe's breaching conduct.[2]

### 2. **Reasonable Certainty of Damages**

The Court must now determine what damages arose as a consequence of Sambe's inaction in the face of Donnelly's breach. The burden falls to Local 27 to establish to a reasonable degree of certainty what damages it incurred as a result of Sambe's breach. See Feldman v. Jacob Branfman & Son, 111 N.J.L. 37, 42, 166 A. 126 (1933); Rest. (2d) Contracts § 352 ("Damages are not recoverable for loss beyond an amount . . . established with reasonable certainty.").

Local 27 has relied upon an assumption that Sambe's failure to perform its obligation of ensuring Donnelly's compliance renders Sambe jointly liable for Donnelly's breach. However, the Court must read PLA article 3, § 1 -- which states that "[t]he General Contractor shall assure compliance with this Agreement by the Contractors" -- in pari materia with PLA article 2, § 5. See Berman v. Gurwicz, 189 N.J. Super. 89, 110, 458 A.2d 1311 (1981); Buscaglia v. Owens-Corning Fiberglas, 68 N.J. Super. 508, 517, 172 A.2d 703 (1961). The latter provision states, "The liability of any Contractor . . . shall be several and not joint . . . .

---

[2] Although Sambe continues to maintain that the PLA is unenforceable in this Court, Sambe has never disputed: (1) that it failed to assure Donnelly's compliance with the PLA, as it was contractually required to do; and (2) that its conduct in failing to assure Donnelly's compliance constitutes the relevant breach at issue in this litigation.

[A]ny Contractor shall not be liable for any violations of this Agreement by any other Contractor . . . ." (PLA, art. 2, § 5.) Local 27 presumes that the former provision supercedes the latter.  The Court disagrees.  Read together, these provisions require that damages recoverable from the General Contractor's failure to "assure compliance" of subcontractors must flow from the General Contractor's breach, not from the underlying breach of the subcontractor.  In other words, Local 27 must establish with reasonable certainty in what way its injury was created or exacerbated by Sambe's breach.[3]

    Local 27 has not done so.  The Court cannot discern from Local 27's submissions any account of its injury that is attributable to Sambe's breach, as distinguished from the underlying breach of Donnelly.  Local 27's most recent submission engages in some speculation that the facts might have unfolded differently if Sambe had tried to enforce Local 27's rights more aggressively.  This sort of conjecture, in addition to being procedurally improper here,[4] cannot form the basis of a damages

---

    [3] The Court can imagine many scenarios in which such a showing would be possible.  Take for example a subcontractor whose breach is accidental and who returns to compliance as soon as he is notified of the breach.  In such a case, the damages could be said to flow from a General Contractor's conduct in intentionally failing to notify the subcontractor of his (accidental) breach.

    [4] Local 27 is precluded from relying upon these "what if" scenarios, as the Court would need to engage in a fact-finding assessment of their likelihood to consider them in a damages

calculation.  Accord Evans v. BV Shipping Co. Lombok Strait, No. 07-3139, 2009 WL 3233524, *2-3 (D.N.J. Oct. 5, 2009) (holding that a damages calculation requires non-speculative evidence).

### 3. Effect of Intervening NLRB 10(k) Decision

A second problem precludes an assessment of compensatory damages against Sambe:  As a result of the intervening NLRB decision, Sambe's breach did not actually materialize into Local 27's damages.  To be clear, Sambe's breaching conduct commenced when Donnelly manifested an intention to assign the roofing work to Local 623 rather than Local 27.  At that point, Sambe would have performed its contractual obligation by instructing Donnelly to assign the work to Local 27.  If Donnelly had then persisted in hiring Local 623, Sambe would have performed its obligation by pursuing one of the dispute-resolution procedures enumerated in the PLA.  (See, e.g., PLA, art. 9.)  Assuredly, Sambe did not do any of these things.  In fact, Sambe flouted its PLA obligation by joining Donnelly in defending the Local 623 assignment before Arbitrator Aiges and this Court.

However, if Sambe had performed its PLA obligation, would Local 27 be in any different position today?  In other words, would Sambe's performance have resulted in reassignment of the

---

calculation.  Local 27 waived all issues of fact in the Joint Final Pretrial Order.  (Ord., Dec. 31, 2009 [Dkt. Ent. 132].) See also Ely v. Reading Co., 424 F.2d 758, 763-64 (3d Cir. 1970) ("[T]he pretrial order is generally binding on the parties.").

roofing work to Local 27?  Local 27 urges the Court to find that Sambe shares with Donnelly full responsibility for causing its injury.  This position, however, does not account for the NLRB's 10(k) award of the roofing work to Local 623 rather than Local 27.  Even had Sambe performed its obligation by enforcing Local 27's right to the disputed work, the work would still ultimately have been assigned to Local 623 in compliance with the NLRB's 10(k) Decision.  Explaining the contract principle of damages causation, the Supreme Court of New Jersey has said,

> The wrong done and the injury sustained must bear to each other the relation of cause and effect; and the damages, whether they arise from withholding a legal right or the breach of a legal duty, to be recoverable, must be the natural and proximate consequence of the act complained of.

<u>Nite Kraft Corporation v. U.S. Trucking Corp.</u>, 112 N.J.L. 294, 299-300, 170 A. 812 (1934) (quoting <u>Warwick v. Hutchinson</u>, 45 N.J.L. 61, 65 (1883)).  Here, an intervening event -- the NLRB's 10(k) Decision -- caused Local 27 to be deprived of the roofing work.

Responding to this unavoidable fact, Local 27 seeks to confuse matters by engaging in unfounded speculation.  There may never have been an NLRB case had Sambe performed its obligation, Local 27 hypothesizes, or the NLRB may ultimately have decided the case differently.  There is no basis in fact for these

suppositions,[5] nor -- as previously discussed -- can such speculation form the evidentiary basis for a damages award.

Donnelly too could argue that the intervening 10(k) Decision vitiates its responsibility for bringing about Local 27's damages. However, Donnelly and Sambe are not similarly situated vis-a-vis the NLRB 10(k) proceeding. First, Donnelly, by creating for itself conflicting contractual obligations, put into motion the series of events that resulted in Local 27's injury. In other words, Donnelly's conduct, unlike Sambe's, brought about the NLRB charges and the resulting 10(k) Decision. (In fact, Donnelly initiated the NLRB proceeding.) As this Court has previously held, it would be perverse to hold Donnelly harmless because, after promising the same work to two unions, it then found itself caught in the middle and asked a third-party to choose between the two.

Second, the contractual obligations of Donnelly and Sambe are different in kind. Sambe's obligation was to assure Donnelly's compliance with the PLA; in other words, Sambe could perform only by securing Donnelly's performance. Donnelly, by contrast, could have discharged its duty under the PLA by exchanging a new set of promises with Local 27 in lieu of performing. See <u>Lorentowicz v. Bowers</u>, 91 N.J.L. 225, 227, 102

---

[5] Further, even if these were realistic possibilities, Local 27 is precluded from relying upon them. See <u>supra</u> note 4.

10

A. 630 (1917); Rest. (2d) Contracts § 281 (explaining that an "accord" substitutes a promisor's performance and discharges his duty under the original contract). Donnelly reaching such an accord with Local 27 would have obviated the need for the NLRB's 10(k) Decision. Sambe, however, could still be said to have nominally breached since Donnelly would have discharged its duty without complying with the PLA. In other words, Donnelly's PLA obligation could have been discharged without resorting to the NLRB. But Sambe's PLA obligation -- securing Donnelly's performance -- required assignment of the roofing work to Local 27, which necessarily would have resulted in the same jurisdictional dispute giving rise to the NLRB's 10(k) Decision.[6]

4. **Nominal Damages**

Based upon the foregoing, the Court finds that Local 27 has failed to establish with reasonable certainty: (1) that any damages have arisen as a consequence of Sambe's breach; and (2) that, if damages have arisen, there is any way to measure those damages. The Restatement (Second) of Contracts § 346 explains, "If the breach caused no loss or if the amount of the loss is not

---

[6] This distinction further illustrates why no measurable damages arose from Sambe's breach. If Donnelly had reached an accord with Local 27 to discharge its PLA obligation, Sambe's resulting breach -- namely, its failure to assure Donnelly's compliance with the PLA -- would not have given rise to any damages. Similarly, when Donnelly pays the value of its promise to Local 27 as damages at the conclusion of this action, Local 27 will have been fully compensated for its injury and there will be no additional injury for Sambe to compensate.

proved . . . , a small sum fixed without regard to the amount of loss will be awarded as nominal damages." Rest. (2d) Contracts § 346; see also Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 477 A.2d 1224 (1984) ("The general rule is that whenever there is a breach of contract, . . . the law ordinarily infers that damage ensued, and, in the absence of actual damages, the law vindicates the right by awarding nominal damages." (citations omitted)).  Accordingly, the Court will award nominal damages in the amount of one dollar to Local 27 for Sambe's breach of the PLA.

## CONCLUSION

For the reasons stated herein, Sambe will be ordered to pay Local 27 one dollar in nominal damages.  As to Local 27's breach of contract claim against Sambe, judgment will be entered in favor of Local 27 and against Sambe.


Dated: March 9, 2010               s/Renée Marie Bumb
                                   RENÉE MARIE BUMB
                                   UNITED STATES DISTRICT JUDGE